```
ALAN B. YUTER (SBN 101534)
THOMAS A. BURGOS III (SBN 193434)
SELMAN BREITMAN LLP
11766 Wilshire Boulevard,
Sixth Floor
Los Angeles, CA  90025
Telephone:(310) 445-0800
Facsimile:(310) 473-2525

Attorneys for Defendant
NATIONAL CASUALTY COMPANY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MTVi GROUP, LLC, a Delaware limited liability company; and THE MTVi GROUP, L.P., a Delaware limited partnership,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONAL CASUALTY COMPANY, a Wisconsin corporation,<br><br>    Defendant. | CASE NO. CV04-2544 R (CTX)<br><br>Date : November 29, 2004<br>Time : 10:00 a.m.<br>Dept. : 8<br>Judge : Hon. Manuel L. Real<br><br>NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. National Casualty issued policy number LS009863, to the named insured Viacom, Inc. for the policy period of June 1, 1998 to June 1, 1999, (the "Policy"). | 1. See Policy, Ex. A. |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 2. Prior to the passage of the DMCA in October of 1998, no license was required for the streaming of sound recordings by nonsubscription internet streaming services like imagineradio.com/ RadioSonicNet (the "websites") operated by the Plaintiffs. However, after the passage of the DMCA, it became imperative for the Plaintiffs (and all other on-line businesses) to obtain licenses for sound recordings and the Plaintiffs began negotiations for such licenses with Universal Music, BMG, EMI, Warner Music Group and Sony (the "Record Companies"). | 2. See letter dated April 5, 2002, Ex. B; See Sussman Depo., pp. 45, lines 12-21, Ex. C. |
| 3. In May of 1999, MTV submitted a claim to National Casualty's broker and claims administrator Media/Professional Insurance Agency, Inc. ("Media"), under National Casualty policy number LS009863 (the "Policy"). | 3. See letter dated April 5, 2002, Ex. B See Sussman Depo., p. 80, lines 10-13, Ex. C. |
| 4. The claim arose from a demand letter received by MTV from the | 4. See May 14, 1999 letter, Ex. D. |

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | Recording Industry Association of America ("RIAA") dated May 14, 1999. In the May 1999 letter, the RIAA demanded that MTV cease making digital transmissions of unlicensed copyrighted music over MTV's internet radio station imagineradio.com, which was later renamed RadioSonicNet. RIAA asserted that imagineradio.com's website was sufficiently interactive so that MTV was not entitled to a statutory license from the copyright owners under the DMCA. | |
| | 5. MTV responded to RIAA's letter stating that, although they were making changes to their format, MTV was entitled to a statutory license. MTV copied the letter to the Record Companies. | 5. See May 19, 1999 letter, Ex. E. |
| | 6. By letter dated July 6, 1999, Chad Milton of Media acknowledged receipt of the May 14, 1999 letter from RIAA and indicated that he would "informally monitor the | 6. See July 6, 1999 letter, Ex. F. |

3

NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| 1 2 3 4 5 6 7 8 9 | situation" because the matter was, at that time, well below the policy triggering threshold. He advised that further notice should be given if litigation commenced or appeared imminent or if MTV believed the matter presented an exposure greater than $100,000. | |
| 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 | 7. The Plaintiffs contacted Media on July 13, 2001, it provided a copy of two lawsuits. The first was filed on June 1, 2001, on behalf of Digital Media Association, Launch Media, Inc., Listen.com, Inc., Xact Radio LLC, Music Match, Inc. and MTVi Group LLC, against RIAA in the Northern District of California("Digital action"). The second suit, filed June 8, 2001, was entitled Sony Music Entertainment, Inc., Capital Records, Inc., the RCA Record Label, Unit of BMG Music dba BMG Entertainment, Arista Records, Inc., Bad Boy Records and Virgin Records America v. MTVi, in the | 7. See July 13, 2001 letter, Ex. G. |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Southern District of New York ("Sony action"). | |
| 8. In Media's July 30, 2001 letter, Michael DiSilvestro ("DiSilvestro"), accepted the defense of the Sony Action. Further, based upon representations from the Plaintiffs that his predecessor, Chad Milton, had previously authorized the filing of a declaratory relief action, approved such an action. | 8. See July 30, 2001 letter, Ex. H; See DiSilvestro Dec., Paragraphs 7 and 9. |
| 9.   October 23, 2001, DiSilvestro documented in an interoffice/ telephone memorandum a conversation with Silverman wherein she informs him that the plaintiffs in the Sony Action had offered to settle for $4.85 million plus attorneys fees. Silverman informs DiSilvestro that she believes that a reasonable settlement is in the $ 1million range and that a portion of any resolution would be for "future licenses." DiSilvestro was informed that the Howrey firm would | 9. See October 23, 2001 memorandum, Ex. I; See DiSilvestro Dec., Paragraph 10. |

NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| be sending reports and invoices. DiSilvestro then writes that he explicitly informed Silverman that he had no authority for settlement without the requested documentation:<br><br>I made it clear to RS [Silverman] that I need concrete document lists, invoices and detailed reports from Counsel before I can participate in <u>any</u> settlement in <u>any</u> way. (emphasis in original) | |
| 10. October 25, 2001, DiSilvestro documented in an interoffice/ telephone memorandum a call from Silverman wherein she informs him that there is an opportunity to settle with BMG for $400,000. | 10. See October 25, 2001 memorandum, Ex. J; See DiSilvestro Dec., Paragraph 11. |
| 11. October 26, 2001, DiSilvestro documented in an interoffice/ telephone memorandum a conversation with Silverman wherein he reiterated again the need for bills and reports. In this conversation, DiSilvestro attempted to enlist the | 11. See October 26, 2001 memorandum, Ex. K; See DiSilvestro Dec., Paragraph 11. |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| help of Silverman to get the defense attorneys to provide him with the needed reports regarding liability. | |
| 12. October 29, 2001, DiSilvestro writes a letter to both the Plaintiffs' counsel Steinthal and Cohen informing them both that it is "imperative that I receive from you a report, an outline for which I have included herein, which gives me your view of the case." | 12. See October 29, 2001 letter to Steinthal, Ex. L.; See October 29, 2001 letter to Cohen M; See DiSilvestro Dec., Paragraphs 13 and 14. |
| 13. November 1, 2001, DiSilvestro documented in an interoffice/telephone memorandum a conversation with Steinthal wherein he asked "first" about the litigation report and budget. Steinthal reported to DiSilvestro that there have been settlement discussions but that the numbers are so large that the discussions were not going anywhere. Steinthal informed DiSilvestro that he would detail the factors at issue-numbers of infringement, per song and use- | 13. See November 1, 2001 memorandum, Ex. N; See DiSilvestro Dec., Paragraph 15. |

NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| in a report that he would send to DiSilvestro. | |
| 14. November 28, 2001, DiSilvestro documented in an interoffice/ telephone memorandum a conversation with Michael Cohen of the Howrey firm wherein DiSilvestro informs him that he needs information and reports regarding liability. Cohen informs DiSilvestro that he has drafts of the reports prepared and will be sending them by "mid-next week." Despite billing National Casualty over $12,000 for the report, it was never sent to DiSilvestro or has been seen by National Casualty. | 14. See November 28, 2001 memorandum, Ex. O; See DiSilvestro Dec., Paragraph 16. |
| 15. On December 13, 2001, DiSilvestro documented in an interoffice/telephone memorandum a conversation with Silverman wherein he reiterated that he needed a "thoughtful report before [he] could seek any authority." | 15. See December 13, 2001 memorandum, Ex. P; See DiSilvestro Dec., Paragraph 17. |
| 16. On January 3, 2002, DiSilvestro documented in an interoffice/ | 16. See January 3, 2002 memorandum, Ex. |

NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| telephone memorandum, that Ken Steinthal called to follow up on his request for information regarding the Sony Action. DiSilvestro reiterated the information that he needed in order to make an intelligent and knowledgeable evaluation of the settlements. | Q; See DiSilvestro Dec., Paragraph 18. |
| 17. By a letter dated November 14, 2001, DiSilvestro, confirmed a telephone conversation between himself and Silverman. In this letter, DiSilvestro specifically informs Silverman he has no authority to give and gave no authority to the Plaintiffs for any settlement:<br><br>    During the call I said that I had no authority to authorize any settlement at this time. This is so because I haven't received the information from defense counsel as to expected costs of litigation and their reports on the merits of the two separate actions. I advised the | 17. See November 14, 2001 letter, Ex. R; See DiSilvestro Dec., Paragraph 19. |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Plaintiffs that I need this information before I could evaluate what role National Casualty may have. | |
| 18. Despite DiSilvestro specifically informing Silverman that the Plaintiffs did not have the authority to settle with BMG, with National Casualty's money, the Plaintiffs settled with BMG anyway, on November 30, 2001, without Media's knowledge or authority. | 18. See BMG settlement and release agreement and license agreement, Ex. S; See DiSilvestro Dec., Paragraph 20. |
| 19. In or about December 11, 2001, the BMG plaintiffs dismissed the Sony action following the confidential and unauthorized settlement with MTV. | 19. See December 11, 2001 dismissal, Ex. T. |
| 20. The Greenan firm requested copies of the settlement agreement reached with the BMG plaintiffs. A series of written exchanges between MTV and the Greenan firm arose thereafter concerning the settlement with the BMG plaintiffs. | 20. See letter dated January 8, 2002, Ex. U; See letter dated February 13, 2002, Ex. V. |
| 21. By letter dated February 25, 2002, the Greenan firm advised | 21. See February 25, 2002 letter, Ex. W. |

NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW

243570.1 380 17589

Selman Breitman LLP
ATTORNEYS AT LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| Plaintiffs that Media had not authorized any settlement and again requested information necessary to determine what National Casualty may offer towards such a settlement. This letter specifically advised the Plaintiffs that the Policy did not permit the Plaintiffs to settle without prior written authorization from National Casualty:<br><br>    As you are no doubt aware, the terms of the policy precludes any coverage obligations for settlement offers or settlements (except those that are less than the SIR) without National Casualty's prior written agreement. National Casualty has not provided any written consent agreement to any settlement in the Sony infringement suit. | |
| 22. However, despite specifically being informed by the Greenan firm that it had no authority to settle any claims, the Plaintiffs, without informing National Casualty, | 22. See Sony settlement and release agreement and license agreement, Ex. X; |

11

**NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | settled the Sony action with Capitol Records/Virgin on March 15, 2002 for $400,000 and Sony on March 28, 2002 for $550,000. | See Capitol/Virgin settlement and release agreement and license agreement, Ex. Y; See DiSilvestro Dec., Paragraphs 20, 25 and 26. |
| | 23. National Casualty did not learn of the above settlements until the Plaintiffs finally responded to the February 25, 2002 letter sent by the Greenan firm on April 5, 2003, after the settlements were reached! | 23. See April 5, 2002 letter, Ex. B; See Sussman Depo., p. 183, lines 11-25, p. 184, lines 1-13, Ex. C. |
| | 24. In the April 5, 2002 letter, the Plaintiffs failed to state the terms of any of the settlements reached in the New York action nor did they provide copies of any of the settlement agreements. | 24. See April 5, 2002 letter, Ex. B; See Sussman Depo., p. 183, lines 11-25, p. 184, lines 1-13, Ex. C. |
| | 25. The plaintiffs did not reveal the terms of the Sony and Capitol/Virgin settlement agreement until a May 29, 2002 conference call with representatives of National Casualty. | 25. See April 5, 2002 letter, Ex. B; See Sussman Depo., p. 183, lines 11-25, p. 184, lines 1-13, Ex. C. |

Selman Breitman LLP
ATTORNEYS AT LAW

243570 1 380 17589

12

NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 26. It was not until a letter dated June 13, 2002, nearly 7 months after the settlement with the BMG plaintiffs, and nearly three months after the settlements with Sony and Capitol/Virgin were reached, that the Plaintiffs finally provided the Greenan firm with incomplete copies of the settlement and license agreements. | 26. See June 13, 2002 letter, Ex. Z. |
| 27. Plaintiffs determined that the total statutory license fee it owed BMG, Capitol/Virgin, and Sony for the license term of October 28, 1998 through December 31, 2002 was $393,804.12. This sum is half what it would have been had the CARP determination of February 20, 2002 not been overturned. | 27. See January 15, 2003 letter, Ex. BB; See Burgos Dec., Paragraph 4; Ex. DD. |
| 28. The Plaintiffs have never wavered from the position that they were entitled to the statutory license and that their conduct was not willful. | 28. See April 5, 2002 letter, Ex. B; Sussman Depo., pg.73 lines 18-20, Ex. C; See May 19, 1999 letter, Ex. E. |

| | UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|---|
| | 29. Plaintiffs also offered non-customized websites as to which Plaintiffs admits that there was no genuine issue regarding infringement. | 29. See Sussman Depo., pages 28-30, Ex. C. |
| | 30. On January 28, 2002, Michael P.A. Cohen of the Howrey firm wrote a letter to Silverman wherein he states:<br><br>Enclosed is a copy of our invoice for professional services rendered and disbursements for the month of December 2001. Collective work for all attorneys and professionals in December amounted to slightly more than six days. **The bulk of the work—five days—was for time Jason Hoffman spent drafting the budget and case update memorandum that MTV's carrier requested. Now that the case will be moving forward in New York, I will finalize both and submit to you and Michael DiSilvestro for review and discussion.** (emphasis added) According to the Howrey | 30. See January 28, 2002 letter, Ex. CC; See Howrey firm legal bills, Ex. II. |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| firm legal bills, this report was drafted between December 6, 2001 and December 19, 2001, prior to the Sony and Capitol/Virgin settlements. | |
| 31. A proposed CARP rate had been set by the Copyright Arbitration Royalty Panel in February 20, 2002, prior to the Sony and Capitol/Virgin settlements. The CARP rate was set at $1.40 per 1000 listeners. This is not mentioned in the April 5, 2002 letter from Silverman and was not discovered by NCC until the instant litigation. | 31. See news article, Ex. DD; See Burgos Dec., paragraph 4. |
| 32. The Plaintiffs admit that they owed the Record Companies money for the use of sound recordings on their website. | 32. See February 7, 2000 letter, Ex. EE; See February 13, 2002 letter, Ex. V; See May 19, 1999 letter, Ex. E; See June 1, 2001 Press Release, Ex. FF. |
| 33. In Plaintiffs' June 13, 2002 correspondence, they represented the BMG license agreement was | 33. See June 13, 2002 letter, Ex. Z. |

NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED
FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| materially similar to the other license agreements entered into, except for the license fee:<br><br>In addition, I am also enclosing a copy of the license agreement between MTVi and BMG. Please be advised that, other than the dollar amounts involved and the language of the confidentiality provisions, the terms of the Capitol Records/Virgin and Sony License agreements are not materially different from those contained in the BMG agreement. | |
| 34. In the Sony license agreement, the Plaintiffs state the Customized Stations are no longer available to consumers and have not been since November 30, 2001. | 34. See Sony license agreement, Ex. X. |
| 35. The Plaintiffs, to this day, still argue that they are entitled to indemnification for the entire $1.55 million as "Damages." | 35. See Plaintiffs' Responses to Contention Interrogatory No. 6, Ex. GG. |
| 36. During the deposition of Sussman, when asked which entity | 36. See Sussman Depo., pg. 203, |

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| paid for the settlement with the Record Companies, he advised the Plaintiffs herein did not pay for the settlements. | lines 10-21, Ex. C. |
| 37. The only documentation in the Media file from Milton to Silverman is a July 6, 1999 letter wherein he states that he received a copy of the RIAA letter claiming infringement but, at the time, the matter fell below the "threshold for creating a formal claim file" and that he would "take no action other than to informally monitor the situation." There is no mention by Milton anywhere in the claim file agreeing to fund the Declaratory Relief Action. | 37. See July 6, 1999 letter, Ex. F. |
| 38. While DiSilvestro states in a July 30, 2001 letter to Silverman that Chad Milton approved coverage of the Declaratory Relief Action, he explained in deposition testimony that he was taking the word of Silverman that this is what Chad Milton had agreed to do, over | 38. See DiSilvestro Depo., pg.148, lines 5-16, Ex. HH. |

17

NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| two years ago | |

## CONCLUSIONS OF LAW

1. NCC does not have to prove prejudice in order to enforce the no voluntary settlement provision in the National Casualty Policy, policy number LS009863, issued to the Plaintiffs. See, e.g., *Low v. Golden Eagle Ins. Co.* (2003) 110 Cal.App.4th 1532.

2. NCC did not breach the implied covenant of good faith and fair dealing because there are multiple genuine issues as to coverage. See *Guebara v. Allstate Ins. Co.*, 237 F.3d 987 (9th Cir. 2001); *Zurich Ins. Co. v. Killer Music Inc.*, 998 F.2d 674

3. The Plaintiffs are not entitled to punitive damages because they cannot demonstrate by clear and convincing evidence, malice oppression or fraud on behalf of NCC. See *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269.

DATED: November 10, 2004     SELMAN BREITMAN LLP

BY: _____
ALAN B. YUTER
THOMAS A. BURGOS III
Attorneys for Defendant NATIONAL
CASUALTY COMPANY

Nov. 29, 2004
U.S.D.J.

**PROOF OF SERVICE**

*MTVi GROUP INC. et al. v. NATIONAL CASUALTY COMPANY*

USDC Case No.:CV04-2544 MMM (CTx)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 11766 Wilshire Boulevard, Sixth Floor, Los Angeles, CA 90025. On **November 10, 2004**, I served the following document(s) described as **NATIONAL CASUALTY COMPANY'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

**See Attached Service List**

☐ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to   for delivery to the addressee(s).

☐ **BY FAX:** I transmitted a copy of the foregoing documents(s) via telecopier to the facsimile numbers of the addressee(s).

☒ **BY PERSONAL SERVICE:** I personally delivered such envelope by hand to the offices of the addressee as indicated on the attached Service List. FIRST LEGAL SUPPORT SERVICES

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 10, 2004, at Los Angeles, California.

_Ed Fuchs_  
First Legal Support Services Name

_Ed Fuchs_  
First Legal Support Services Signature

216849 1 380.17589

1

MTVi GROUP INC. et al. v. NATIONAL CASUALTY COMPANY

**SERVICE LIST**

| | |
|---|---|
| David P. Schack, Esq.<br>Kevin S. Asfour, Esq.<br>KIRKPATRICK & LOCKHART LLP<br>10100 Santa Monica Blvd.,<br>Seventh Fl.<br>Los Angeles, CA  90067 | Attorneys For Plaintiffs MTVi GROUP LLC and THE MTVi GROUP L.P.<br><br>Tel:  (310) 552-5000<br>Fax:  (310) 552-5001 |

Selman Breitman LLP
ATTORNEYS AT LAW

216849 1  380.17589